## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  06-124 (ESH) |
| | : | |
| v. | : | |
| | : | |
| CASSANDRA HARRIS, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## GOVERNMENT'S CONSOLIDATED OPPOSITION
## TO DEFENDANT'S PRE-TRIAL MOTIONS

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby opposes defendant's Motions to Produce the Record of the Grand Jury Concurrence, Inspect the Grand Jury Minutes, for Disclosure of <u>Brady</u> Material, and Dismiss the Indictment.  None of defendant's motions have any merit and should be summarily denied. In support of this consolidated opposition, the government submits the following.

## I.      FACTUAL BACKGROUND

On May 10, 2006, a duly impaneled grand jury in the United States District Court for the District of Columbia returned an indictment, charging defendant with four counts of federal income tax evasion (26 U.S.C. § 7201) and one count of local first degree fraud (D.C. Code § 22-3221(a)) .  <u>See</u> Exhibit 1.  These charges stem from defendant's affirmative attempts to evade her federal and local income taxes for the calendar years 1999 through and including 2002.

### A.      Federal Charges

In May 1999, defendant's employer, the Central Intelligence Agency ("CIA"), honored her request to stop withholding federal and local income taxes from her salary.[1]  She completed

---

[1] The withholding forms are dated January 1999, however, it does not appear that the CIA received them until May, 1999.

new federal and DC withholding certificates, a Form W-4 and a Form D-4, wherein she swore, under the penalty of perjury, that she was exempt from withholding. See Exhibit 2. Specifically, she claimed on each of these certificated forms that the previous tax year (1998), she owed no taxes and was entitled to a full refund of all federal income taxes that had been withheld. She also swore under the penalty of perjury that she did not expect to owe taxes for the current year (1999).

These statements were false. On March 8, 1999, defendant filed her 1998 U.S. Individual Income Tax Return in which she correctly reported that she earned $59,846 in wage income from the CIA and owed $8,570 in tax. Even with the benefit of a tax credit that reduced her tax liability to $5,699, defendant was not entitled to a full refund of all the monies withheld by the CIA during the 1988 calendar year.[2] With respect to the 1999 tax year, defendant knew she would incur a similar tax liability. Since she would not be eligible to retire from the CIA for many years, she knew her employment status would not change. Indeed, defendant knew from her tenure with the CIA that it was more likely that her income and tax liability would increase in 1999.

In addition to the false withholding certificates, defendant filed false Individual Income Tax returns with the federal government for the tax years 1999 and 2000. On April 25, 2000, defendant filed a federal Form 1040, falsely claiming that she had no income and owed no taxes. She requested a $1,917.58 refund, which represented all the monies withheld before the CIA stopped withholding taxes from her pay. Defendant, however, knew that she earned $70,608.04

---

[2] She also was not entitled to claim exemption from withholding D.C. income taxes because her 1998 District of Columbia Individual Income Tax Return reflected a tax due and owing of $4,157.

in income and was not entitled to this refund.  In fact, she knew that she owed substantially more

in taxes in the approximate amount of $10,759.

When she filed her 1999 federal return, defendant attached an affidavit in which she

stated, among other things, the following:

> I, Cassandra Harris, am submitting as an integral part of this 1999 tax return even
> though I know that NO section of the IRC: 1. Established an income tax 'liability .
> . . 2. Provides that income taxes 'have to be paid on the basis of a return . . .
> Therefore, this return is NOT being filed voluntarily, but is being filed out of fear
> that if I did not file this return, I could also be (illegally) prosecuted for failing to
> file an income tax return for the year 1999.

See Exhibit 3.

On June 26, 2000, the Internal Revenue Service ("IRS") notified defendant that her 1999

federal income tax return was wrong.  In fact, the IRS told her that she owed delinquent taxes.

See Exhibit 4.  In this letter, the IRS clearly stated that defendant must respond.  Id. ("This is not

a bill, but you do need to respond.")  The IRS also sent defendant copies of IRS Publication 1

and Notice 609, which explained defendant's rights to her.  See Exhibits 5 & 6. Rather than

complying with the IRS's request for payment, the defendant sent IRS its letter back with copies

of her false Forms W-4 and D-4.  She also attached an affidavit demanding that the IRS cease

withholding taxes.  Defendant told the IRS that it lacked the legal authority to assess any amount

other than what she stated on her return.  Specifically, she wrote:

> This is to reply to your letter of 6/26/00, in which you notified me that 'we are
> proposing to change your return.' This letter is to put you on notice that there is no
> Code Section in the IRC that authorizes the IRS to 'change' returns. . . . . ONLY I
> can make a 'self-assessment' concerning what my income tax liability may be for
> 1999. Since I concluded that my 1999 income tax liability is 'zero' for that year, I
> did not 'self-assess' myself with any income tax liability for that year; therefore,
> no income tax liability is shown on my 1999.

See Exhibit 7. Defendant warned the IRS that if any of its employees attempts to change her return by assessing an additional tax, "they [would] do so at their own criminal and/or civil peril." Id.

The IRS tried to remedy the situation. In the Fall of 2000, an IRS employee scheduled an appointment to meet with defendant. The defendant did not attend. See Exhibit 8. A month later, this same IRS employee mailed defendant the proposed changes to her 1999 return with a detailed explanation, including a response to many of defendant's legal questions with appropriate statutory and case citations. She explained to defendant that

> the term 'voluntary' as used in the IRS publications refers to our system of allowing the taxpayer to disclose the relevant facts to determine the correct amount of tax rather than the government determining the amount of tax for them. "Voluntary self-assessment' does not grant the individual the option to decide not to file a tax return, to leave taxable income off a filed return, or to show incorrect tax on the return. . . Reporting of an individual's income is not voluntary. . .

See Exhibit 9. She also told defendant that "all employers are required to withhold income tax on an employee's wages." She advised defendant that the IRS publication defendant relied upon in her correspondence did not apply to United States citizens. Rather, the publication referred to non-resident aliens, which the defendant is not. Id.

When defendant failed to schedule an appointment with the IRS employee assigned to her case, another notice of delinquency was issued. Apparently upon receipt of this correspondence, defendant telephoned the IRS to complain that her rights had been violated. The IRS employee assigned to her case, returned defendant's telephone call that same day. Unable to speak with defendant directly, the IRS employee left her a detailed message. Several additional telephone messages were exchanged between defendant and this IRS employee. Finally, on May

4

16, 2001, defendant came to the IRS office to discuss her tax delinquency. Accompanied by her brother, defendant repeated her assertion that the IRS lacked the authority to make a tax assessment on her income. Although defendant provided some incomplete case citations, the IRS employee told defendant that it is doubtful that there were any cases that would allow her to exclude her income. The IRS employee nevertheless asked defendant to provide complete case citations to support her legal assertions. Defendant never did so.

Despite being informed by the IRS that her 1999 tax return was wrong and her views of the tax laws were incorrect, defendant filed a similar federal income tax return for the 2000 tax year, claiming she had no wages and owed no taxes. In an affidavit attached to this return, defendant told the IRS that it should pursue her employer if there is a problem with her return. See Exhibit 10. According to defendant, her employer had improperly filed Forms 1099 against her. Id.

The IRS continued to notify defendant that her interpretation of the tax laws was erroneous. Yet, defendant made no effort to follow the dispute procedures set forth in the IRS publications provided to her. She sent more correspondence challenging the IRS's legal authority to assess taxes. For example, on July 27, 2001, defendant sent a letter to the IRS, claiming, among other things, that the tax laws were unconstitutional due to lack of apportionment. See Exhibit 11. According to defendant, income taxes must be "laid upon the State Government in proportion to each state's population." Id. Defendant also claimed that it was illegal to tax her because as a resident of the District of Columbia she lacked representation and "[t]axation without representation is Tyranny." Id. Accordingly, she requested "a rebate of all monies [she previously] paid into the system illegally." Id.

5

In the meantime, the IRS continued in its efforts to resolve defendant's delinquency. On

July 13, 2001, the IRS sent an official Notice of Deficiency for the 1999 tax year to defendant.

See Exhibit 12. The Notice specifically explained how and where defendant could challenge this

assessment:

> If you want to contest this determination in court before making any payment, you
> have 90 days from the date of this letter . . . to file a petition with the United
> States Tax Court for a redetermination of the deficiency.. . . The Tax Court has a
> simplified procedure for small tax cases when the amount in dispute is $50,000 or
> less for any one year. You can also get information about this procedure by
> writing to the Tax Court. You should write promptly if you intend to file a
> petition with the Tax Court.

The letter also warned that if a petition was not filed, the IRS would assess and bill defendant for

the stated deficiency. Id. at 2. If defendant had any questions, the letter provided the name and

telephone number of an IRS employee who could assist her.

Defendant did not file a petition in Tax Court. Instead, she continued to espouse her

incorrect views of the tax laws, demanding an administrative review of the accessed deficiency:

> I am sending this affidavit in rebuttal to the findings of your agency . . as
> regarding me as being a taxpayer liable for something I don't even earn. The first
> issue I would like to address is the voluntary compliance of our income tax
> system. The SC states that our entire income tax system is based on voluntary
> assessment, not distraint.

See Exhibit 13. Even though she failed to follow the IRS' explicit instructions for challenging

the assessment, the IRS continued to respond. Again and again, the IRS told defendant that "no

basis exists for modification of the determination stated in the Statutory Notice." See Exhibits

14 & 15. The IRS repeated its instructions by advising defendant to either agree to the changes

or file a petition with Tax Court and challenge the assessment. Id. Defendant did neither. Once

the 90 days expired, the IRS made an official assessment.

6

Defendant was notified by mail several times that an outstanding balance remained on her

account for the 1999 tax year. Indeed, defendant acknowledged receiving such notifications

when she returned them to the IRS with more of her incorrect legal claims. On the IRS's January

21, 2003 Reminder Notice, defendant wrote:

> [t]his property is exempted from levy. Please adjust this account and release the
> proceeds, products, accounts and fixtures and release the order or orders of the
> court to me immediately. Listing value at 19,582.11

See Exhibit 16. Defendant signed her name and provided her social security number. In

addition, defendant attached a letter to the IRS Commissioner, in which she explicitly denied

being a "tax protester." See Exhibit 17. She told the Commissioner that she had performed her

own research and concluded the following:

> 1. I'm not specifically named in IRS 6331 for the tax to be applied.
> 2. I have not received notice that I'm required to keep books and records.
> 3. I was not in any manner notified that I was the 'subject/or the object' of then
> income tax.
> 4. I was not noticed that the tax is only applied to corporate activity.
> 5. I have not been shown that my livelihood is considered 'income,' having the
> aspect of 'gain and profit.'
> 6. I have not been notice that the IRS is an agency of the US.
> 7. I'm unaware if aby specific contract with such 'agency' not a part of the US, to
> have some bearing to the 'internal' (taxing) affairs of the US on any debt owed by
> the US *Corporation*.
> 8. I have not been noticed that I'm a party to the US Constitution that would
> establish a nexus to any federal agency for any purpose not previously disclosed,
> aside from any secret or implied contracts entered into without full disclosure.
> 9. I have not been disclosed of the 'interest' the US has in myself, my property or
> same as applied to my debtor, how it was credited and/or if the 'interest' is merely
> found or established in the corporate entity Debtor as identified on the IMP file.

Id. She further attached a Memorandum of Law on the subject of peonage in which she quoted

the following from a 1905 Supreme Court decision:

> 'because all of our property is acquired through our labor and our income in not

derived from sources within any agency or instrumentality of the United States Government; thus any transfer of our property without our consent constitutes deprivation that has the result to compel us to labor for others, a prohibited condition of peonage addressed in federal law and in most state statutes.'

Id.

In the meantime, defendant failed, as required by law, to timely file her Individual Income Tax Returns for the 2001 and 2002 tax years by April 15th of the following year. The IRS sent her computer generated delinquency notices for these years.[3]

In August 2003, defendant's account was personally reviewed by a Revenue Officer in Landover, Maryland. In an attempt to settle her outstanding balance for the 1999 tax year, the Revenue Officer left telephone messages at her home and work. He also left his business card at her home with copies of IRS publications, explaining taxpayers' rights and the IRS collection process.

During the same time period, the IRS continued to send automated reminder notices to defendant. Defendant sent a Notice dated August 16, 2003, back to the IRS upon which she wrote: "Accepted and Returned for Closure. Please return voucher to me. You are using my private exemption. PAID IN FULL." See Exhibit 18. She wrote a letter, claiming that she was satisfying her debt with a bond she was providing. According to defendant, "the amount of the bond [wa]s blank in order that [the IRS could] assess the appropriate amount of additional interest incurred." See Exhibit 19. Defendant signed this letter as "a Woman Holder in Due Course, Principal, Surety, Owner, Secured Party - Creditor without recourse." Id. She also enclosed a UCC Financing Statement that appeared to be filed with the State of Maryland on

---

[3] It was not until May 2004, after she learned of the criminal investigation, that defendant filed her federal 2001 and 2002 returns.

April 25, 2003, listing herself incorporated as debtor and personally as the creditor. See Exhibit

20. By its terms, this filing purportedly attempts to protect defendant's assets from seizure.

## B.    D.C. Charge

Similar to her dealings with IRS, defendant made false representations and filed false and

fraudulent documents with the District of Columbia Office of Tax and Revenue (OTR) between

January 1, 1999 through April 15, 2003. Defendant submitted a local withholding form, Form D-

4, to the CIA in 1999 instructing it to cease withholding local income taxes because she was

exempt from payment. On April 25, 2000, defendant filed a fraudulent 1999 tax return with the

District of Columbia, Form D-40EZ, falsely claiming she had no income for that tax year. She

also requested a refund of $639.06 for the monies withheld by the CIA before it stopped

withholding taxes from her pay. Defendant knew she was not entitled to this refund because she

earned $70,608.04 from the CIA according to the Form W-2 she attached to her false local

return. She also attached an affidavit to her 1999 local Individual Income Tax Return similar to

the one she attached to her federal Individual Income Tax Return.

On April 16, 2001, defendant filed her 2000 Form D-40EZ and reported her correct

income of $74,824 and a tax due of $6,140, but did not pay the taxes. She also attached another

document explaining her tax protester views. See Exhibit 21. In December 2001, an OTR

employee tried to reach defendant regarding her taxes, but she did not return the call.

On April 15, 2002, defendant did not file a local Individual Income Tax Return for the

2001 tax year although she earned $85,502.[4] In May 2002, OTR referred defendant to the

---

[4] Defendant owed approximately $6,848 to the District of Columbia based on her salary
for 2001. It was not until four years later, on June 7, 2005 that defendant filed a D.C. Individual
Income Tax Return for 2001.

criminal division.  In May 2002, OTR Special Agent Joseph Saddler contacted defendant to set

up a meeting.  See Exhibit 22.  Although defendant met with Agent Saddler on June 4, 2002, she

refused to be interviewed.  Instead, she provided him with another tax protester document,

entitled Notice of Status, in which she stated among other things:

> I, Cassandra Harris, a living soul and inhabitant of the land in the
> District of Columbia, by the exercise of substantive and inherent
> rights, does hereby NOTICE the General Public and All
> Governmental, Administrative and Corporate Entities operating
> upon the Soil of Washington DC that Cassandra Harris is not a
> representative, in any manner, of a Legal Fiction.

See Exhibit 23.

On September 6, 2002, another OTR employee attempted to contact defendant and left

her a voice mail message.  Defendant did not return that call.  On September 13, 2002, the OTR

employee sent defendant and her credit union a notice of intent to file a levy.  See Exhibit 24.  On

September 16, 2002, OTR placed a levy on her bank account.  The OTR employee continued to

try and contact defendant.  On September 20, 2002, OTR received $3,835 from defendant's

credit union pursuant to the levy filed by the District of Columbia.

On October 16, 2002, defendant finally contacted the OTR employee regarding the levy.

She alleged that her wages were being garnished at the CIA.  Thereafter, the OTR employee sent

a release of levy to defendant's credit union.  When OTR did not receive the garnishment from

the CIA, the OTR employee made attempts to contact defendant.

On December 16, 2002, defendant contacted the OTR employee and made arrangements

to set up a payment agreement.  Defendant promised to start paying her delinquent taxes

beginning in January 2003 at $300 per month.  Defendant also was supposed to send OTR a

signed copy of the payment agreement, but failed to do so. No payment was forthcoming in January, February or March 2003. On February 19, 2003, OTR sent defendant a tax deficiency notice for her 1999 tax years based on a federal adjustment. On March 7, 2003, OTR resent the levy to the CIA and defendant's credit union. On March 17, 2003, defendant called the OTR employee and said she was waiting on envelopes to send her payments and the payment agreement. On April 15, 2003, defendant failed to file her 2002 D.C. income tax return.[5] On April 22, 2003, defendant made a payment by money order in the amount of $300.[6] Thereafter, OTR continued its attempt to bring defendant into compliance with no success.

## II.    **DISCOVERY**

On May 15, 2006, defendant was arraigned at which time she entered a plea of not guilty. On May 30, 2006, the government provided Rule 16 discovery and informed defendant's counsel that the government was unaware of any Brady material. See Exhibit 25. On June 6, 2006, the government provided additional discovery materials. See Exhibit 26. In a letter dated August 28, 2006, the government provided the names of its expert witnesses and summaries of their anticipated testimony. See Exhibit 27.

As the government prepared for a September 25, 2006 trial date, additional documents have been made available for defense counsel's review. These include IRS and OTR records and confidential materials from the CIA.[7] On several occasions, the government advised defendant

---

[5] Defendant eventually submitted to OTR an undated and unsigned 2002 return in 2005.

[6] Defendant made a total of four partial payments toward her D.C. tax deficiency.

[7] On August 16, 2006, the government sought the Court's permission to disclose some of these materials to defendant.

that these materials are available for her review.  Defendant's prior counsel, Dennis Eshman,

scheduled an appointment to review these materials on September 7, 2006.  Defendant's current

counsel, Mark Lane, entered his appearance on September 6, 2006 and Mr. Eshman canceled the

appointment.  Although Mr. Lane's paralegal informed the government that Mr. Lane would

contact the government to schedule a time to review the materials, Mr. Lane has made no attempt

to contact the undersigned Assistant U.S. attorneys.

## III.    LEGAL ARGUMENT AND AUTHORITIES

### A.    Defendant was Properly Charged by Way of Indictment

Defendant claims that she has not been properly charged because the Indictment she

received at the time of her arraignment was not signed by a grand jury foreperson.  Yet, the

Indictment in the official court record is signed.  See Exhibit 1.  Defendant's argument is moot.

### B.    Defendant is Not Entitled to Inspect the Grand Jury Minutes

Defendant also claims that she is entitled to inspect the grand jury minutes because the

Indictment was not signed by a grand jury foreperson.  Again, her motion is factually incorrect

and should be summarily denied.[8]

---

[8] Defendant further alleges that she is entitled to review of the grand jury minutes, including transcripts of witness testimony, to determine whether there was any grand jury abuse. With absolutely no legal support, defendant implies that the government was required to present evidence to the grand jury that she filed "amended returns" for the tax years 1999 through 2003. It appears that defendant is arguing that the government's failure to present such evidence to the grand jury represents Brady material. This is absurd. This evidence has no exculpatory value. As the government argued in its Motion in Limine, defendant's filing of income tax returns after she learned of the criminal investigation is not relevant to whether or not she committed the crimes charged.

Moreover, in order for this Court to order the disclosure of the grand jury minutes, defendant must show that the requested material is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure outweighs the need for continued secrecy, and

## C.    The Government had Fully Complied With its Discovery Obligations

Even though the government has represented to the Court that it has complied with its

discovery obligations, defendant seeks an order directing the government to disclose Brady

material. With the exception of the IRS Individual Master File, defendant has not specified what

potentially exculpatory documents she believes the government has failed to produce.[9]

---

that the request is structured to cover only the material needed. Douglas Oil Co. v. Petrol Stops
Northwest, 441 U.S. 211 (1979). Defendant has failed to make such a showing. See In re Sealed
Motion, 880 F.2d 1367 (D.C. Cir. 1989) (court ordered disclosure of witness' grand jury
transcript to enable him to protect his actions in office and his reputation in the community by
assuring the accuracy of any grand jury references to his conduct in office).

[9] The government has provided numerous IRS transcripts to defendant and others are
available for her review. The government does not believe that the information contained in the
IRS Individual Master File differs from the other information available to her.

Rule 16(a)(1)(E)(I) provides that the government must disclose evidence within the
government's possession that is "material to preparing the defense." The law requires defendant
to make a threshold showing of materiality before an order compelling production is granted.
Evidence is material to preparing the defense where there is a "strong indication" that it will play
an important role in uncovering admissible evidence. United States v. Lloyd, 992 F.2d 348, 351
(D.C. Cir. 1993); see also United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996)
(disclosure required only if such evidence significantly alters the "quantum of proof" in favor of
the defendant). To be material, the evidence sought must be more than simply "some abstract
relationship to the issues in the case.' " United States v. George, 786 F. Supp. 11, 13
(D.D.C.1991).

Defendant has not even attempted to identify the evidence that the government has failed
to disclose. See United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) (the materiality
standard requires a presentation of "facts which would tend to show that the government is in
possession of information helpful to the defense."). The government can not conduct an
adequate search without knowing what defendant is seeking. In addition, defendant has not
attempted to establish why the government should provide such materials to her. See United
States v. Libby, 2006 WL 574260 at 10 (D.D.C. March 10, 2006) (court found that request for
documents covering a sweeping time period were not material to the preparation of the defense");
United States v. Safavian, 233 F.R.D.12, 18 (D.D.C. 2005) (defendant's request for "reports,
documents, e-mails and correspondence sent to or from" various government officials without a
time restriction unreasonable).

Furthermore, defendant has made no attempt to review the additional discovery available for her review. The materials she seeks may already be available to her without this Court's intervention. Accordingly, her motion should be denied.

**D.    The Indictment Clearly Alleges the Crime of Income Tax Evasion**

Defendant further requests the Court to dismiss the federal charges in the Indictment because the government has not established that "defendant ever evaded, or attempted to evade a federal income tax." At most, defendant contends that the evidence establishes the crime of failure to file an income tax return, in violation of 26 U.S.C. Section 7203. She is wrong.

To establish the crime of income tax evasion, the government must prove the following elements beyond a reasonable doubt: (1) an affirmative attempt to evade or defeat payment of a tax; (2) a tax deficiency and (3) willfulness. Sansone v. U.S., 380 U.S. 343, 351 (1965). The Supreme Court has held that "any conduct, the likely effect of which would be to mislead or to conceal" for tax evasion purposes can constitute an affirmative act. Spies v. United States, 317 U.S. 492, 499 (1943). The government can allege more than one affirmative act to evade in the indictment, but "need not prove each affirmative act alleged." United States v. Mackey, 571 F.2d 376, 387 (7th Cir. 1978).

The most common affirmative act of evasion is the filing a false tax return. See, e.g., United States v. Habig, 390 U.S. 222 (1968); Sansone v. United States, 380 U.S. 343 (1965). By omitting income, the tax on the return is understated, and the correct amount of tax is not reported by the taxpayer. By reporting a lesser amount, there is an attempt to evade or defeat tax by evading the correct assessment of the tax.

In addition, courts have uniformly held that the filing of a false Form W-4 constitutes an

14

affirmative act of evasion.[10]  See DiPetto v. United States, 936 F.2d 96 (2d Cir. 1991); United States v. Williams, 928 F.2d 145 (5th Cir. 1991); United States v. Waldeck, 909 F.2d 555 (1st Cir. 1990); United States v. Connor, 898 F.2d 942(3d Cir. 1990).  Courts also agree that the filing of one false Form W-4 satisfies the affirmative act requirement for each year that it remains in effect.  Williams, 928 F.2d at 149 (defendant properly convicted of tax evasion regarding years 1983-85 where false W-4 claiming 50 exemptions was filed in 1983 and remained in effect through the prosecution period); DiPetto, 936 F.2d at 96 (defendant under a continuing obligation to correct intentional misrepresentations on the form).  Even where defendant fails to file a return, the filing of the false W-4 satisfies the affirmative act element.

Failing to file a return, coupled with an affirmative act of evasion, has come to be know as a Spies evasion.  Spies v. United States, 317 U.S. 492 (1943).  An example of a Spies evasion is found in United States v. Goodyear, 649 F.2d 226, 228 (4th Cir. 1981).  In Goodyear, there the defendants failed to file a tax return and later falsely stated to IRS agents that they had earned no income in that year and were not required to file a return.  The defendants false statements to agents constituted affirmative acts of evasion supporting their section 7201 convictions.  See also, United States v. Frederickson, 846 F.2d 517, 520-21 (8th Cir. 1988)(holding that repeated false statements to IRS agent were sufficient evidence to support a jury finding of at least one affirmative act).

---

[10]  Knowledge of defendant's income by her employer or the IRS, is not relevant to defendant's affirmative act of evasion because Section "7201 is a crime of attempt, and whether [defendant] succeeded in [her] attempt to evade assessment of income taxes is irrelevant." United States v. King, 126 F.3d 987, 993-94 (7th Cir. 1997).  Similarly, in a prosecution for filing a False Form W-4, "[a]ny other knowledge or suspicions of employers or government officials are irrelevant to the purpose because it is only the information of the certificate which effects tax withholding."  United States v. Malinowski, 347 F.Supp. 347 (E.D. Penn. 1972).

Here, defendant committed multiple affirmative acts of tax evasion. First, in attempting to evade her taxes for all four of the prosecution years, defendant filed and maintained with her employer a false Form W-4, claiming she was exempt from withholding and as a result, her employer did not withhold taxes. For the 1999 and 2000 tax years, defendant filed individual tax returns in which she falsely and fraudulently stated she earned no income and owed no taxes.[11] She also attached letters to those returns which contained false statements regarding her income and tax liability. With respect to the 2001 and 2002 tax years, defendant failed to file <u>any</u> tax return. Moreover, starting in 2000 and continuing throughout the prosecution period, defendant submitted documents to the IRS containing false claims regarding her income and taxes. While defendant attempted to evade her taxes by more than one affirmative act, the law requires the government only need prove one affirmative act of evasion to support conviction for a given year.

With respect to the tax deficiency element, the government is not required to charge or prove the exact amount of tax that is due and owing. <u>See</u> <u>United States v. Thompson</u>, 806 F.2d 1332 (7th Cir. 1986). It is simply enough to prove that defendant attempted to evade a substantial income tax. In this case defendant did not pay her taxes during the prosecution tax years, thus, the government can easily prove the outstanding tax loss from defendant's Form W-2s showing her income and summary or expert testimony regarding defendant's taxes owed on that income, any interest income or personal property taxes.[12] Whether a tax deficiency is substantial is a jury

---

[11] With respect to her 1999 return, Harris also sought a refund that she was not entitled to

[12] The Court's August 17, 2006 Order precludes evidence that defendant subsequently submitted correct assessments of her taxes for the prosecution years or paid her delinquent taxes.

16

questions.  See United States v. Davenport, 824 F.2d 1511, 1517 (7th Cir. 1987) ($3,358 in taxes

due sufficient to support taxpayer's conviction); United States v. Cunningham, 723 F.2d 217 (2d.

Cir. 1983) ($2,617 in taxes due found substantial).

Finally, the government must show that defendant acted willfully, which has been defined

by the courts as a voluntary, intentional violation of a know legal duty.  Cheek v. United States,

498 U.S. 192 (1991);  United States. v. Pompanio, 429 U.S. 10, 12 (1976).  Accordingly, the

government must show that defendant was aware of her tax obligations under the tax laws.

United States v. Buford, 889 F.2d 1406 (5th Cir. 1989); United States v. Fitzsimmons, 712 F.2d

1196 (7th Cir. 1983).  This is a subjective standard.  United States v. Aitken, 755 F.2d 188, 191-

192 (1st Cir. 1985).  However, a belief that the tax statutes are unconstitutional is "irrelevant to

the issue of willfulness."  United States v. Cheek, 498 U.S. 192, 206 (1991).  "[N]either a

defendant's disagreement with the law, nor his own belief that such law is unconstitutional–no

matter how earnestly held–constitute a defense of good faith misunderstanding of the law."

United States v. Ware, 608 F.2d 400, 405 (10th Cir. 1979), cited with approval in United States v.

Grumka, 728 F.2d 794 (6th Cir. 1984).

The government has the burden of "negating a defendant's claim of ignorance of the law

or a claim that because of a misunderstanding of the law, he had a good faith belief that he was

not violating any of the provisions of the tax laws."  United States v. Cheek, 498 U.S. at 202.

The jury may nevertheless "consider the reasonableness of the defendant's asserted beliefs in

determining whether the belief was honestly or genuinely held."  United States v. Grunewald,

987 F.2d 531, 536 (8th Cir. 1993).[13]

Despite defendant's contentions, the government does not have to prove that the defendant had "bad faith or evil intent."  <u>See</u> Defendant's Motion to Dismiss Indictment at p. 5. To the contrary, the court in <u>Pomponio</u>, stated that its references to bad faith and evil intent meant nothing more than that there was "an intentional violation of a known legal duty." <u>Id</u>. at 12.  Therefore, "willfully" connotes a voluntary, intentional violation of a known legal duty, and "it does not require proof of any other motive."[14]  <u>United Sates v. Jerde</u>, 841 F.2d 818, 821 (8th Cir. 1988)(citing <u>United States v. Pomponio</u>, 429 U.S. 10, 12 (1976)); <u>accord</u>, <u>United States. v. Moylan</u>, 417 F.2d 1002, 1004 (4th Cir. 1969)("to require a bad purpose would be to confuse the concept of intent with that of motive"); <u>United States v. Schafer</u>, 580 F.2d 774, 781 (5th Cir. 1978)(proof of evil motive or bad intent not required); <u>United States v. Patrick</u>, 542 F.2d 381, 389 (7th Cir. 1976)("bad" before "purpose" may be omitted from willfulness instruction).  The Ninth Circuit, however, stated that showing of bad motive or evil purpose can substitute for a showing of intentional violation of a known legal duty as a means fo establishing  willfulness. <u>United Sates v. Powell</u>, 955 F.2d 1206, 1211 (9th Cir. 1992).   A defendant's good motive is not a defense to a finding of willfulness.  The Supreme Court upheld as proper a jury instruction that "'[g]ood motive alone is never a defense where the act done or omitted is a crime,' and that consequently motive was irrelevant except as it bore on intent."  <u>United States v. Pomponio</u>, 429 U.S. at 11; <u>accord</u>, <u>United States v. Dillon</u>, 566 F.2d 702, 704 (10th Cir. 1977).

---

[13] The government is not required to prove motive.  <u>Pomponio</u>, 429 F.2d at 12; <u>United States v. Sate</u>, 814 F.2d 449, 451 (7th Cir. 1987) (no need to prove "evil-meaning mind").

[14] For example, the government is not required to prove motive such as attempting to evade taxes because of "financial plight."  <u>See</u> defendant's Motion at p. 5.

The element of willfulness is rarely the subject of direct proof and must be generally be inferred from the defendant's acts or conduct. United States v. Collorafi, 876 F.2d 303, 305 (2d Cir. 1989); United States v. Magnus, 365 F.2d 1007 (2d Cir. 1966). The evidence in this case demonstrates that defendant knew what the law required and she intentionally sought to violate her legal duty. Defendant's willfulness can be inferred from a number of facts, including, but not limited to: defendant's years as a long time government employee working in the field of human resources, her preparation and timely filing of income tax returns and payment of taxes prior to 1999, defendant's receipt of her Form W-2s from her employer alerting her of her duty to file accurate tax returns, defendant's submission of tax protest documents to the government, defendant's choice to ignore any IRS' attempts to bring her into compliance, and defendant's complaints that the IRS were violating her rights and demanding answers to her baseless constitutional arguments regarding her obligation to pay taxes. Whether these actions show defendant's willfulness is a question for the jury to decide.[15]

**E.    The Indictment Alleges the Crime of First Degree Fraud**

Although it is unclear from defendant's motion, it appears that defendant alleges that the Court should dismiss the local charge of first degree fraud because the government can not establish the charge. This argument is without merit.

To establish the crime of first degree fraud, the government must prove the following elements beyond a reasonable doubt that: 1) defendant engaged in a scheme or systematic course of conduct; 2) with the intent to defraud the District of Columbia by means of a false or

---

[15] The Court has already ruled that evidence of defendant's filing amended returns or late returns in 2004 or any subsequent payment of taxes is irrelevant to the issue of willfulness and the attempt to evade taxes and inadmissible. See Court's August 17, 2006 Order.

fraudulent pretenses, representations or promises; 3) as a result of that scheme or systematic course of conduct, the defendant obtained property of the District of Columbia, consisting of District of Columbia income taxes; and 4) the property lost or obtained had a value of $250.00 or more. See U.S. v. Lloyd, 71 F.3d 408, 419 (D.C. Cir. 1995); Bell v. U.S., 790 A.2d 523, 529 (D.C. 2002).

Here, defendant devised a scheme to withhold payment of her individual income taxes for four years from the District of Columbia. In order to effectuate her scheme, defendant, made false and fraudulent representations, including, but not limited to, submitting a false withholding statement to the CIA, filing a false Individual Income Tax Return with the District of Columbia, providing erroneous legal arguments to avoid payment, telling OTR that her wages were being garnished, promising to pay her delinquent taxes and then failing to pay. The total amount of taxes lost by the District of Columbia was well over $250. Thus, there is no basis for the Court to dismiss the local fraud charge.

WHEREFORE, the United States moves this Court for an Order denying all of defendant's Motions.

Respectfully submitted,

JEFFREY A. TAYLOR
INTERIM UNITED STATES ATTORNEY
D.C. Bar #498610

_____
Susan Menzer D.C. Bar #421007
Diane G. Lucas, D.C. Bar #443610
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street NW, Fifth Floor
Washington, DC 20530