IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
        Plaintiff,       )
                    )
        v.             )     CASE No.:  1:06-cr-00124-ESH
                    )
CASSANDRA HARRIS,       )
        Defendant     )

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS
DUE TO PROSECUTORIAL MISCONDUCT**

**I. THE FACTS**

1.     On December 11, 2006, undersigned counsel met with Assistant United States Attorneys Susan Beth Menzer, Esq. and Diane G. Lucas, Esq., to discuss various pre-trial issues, as well as to explore the possibility of resolving this matter prior to trial.  The meeting took place in the cafeteria in the courthouse at 10:00 AM, shortly before the parties were to appear before this court for a status conference.

2.     Also present at that meeting were Ms. Sue Herndon, a paralegal with the Lane Law Firm, and two representatives from the District of Columbia Office of Tax and Revenue.

3.     Ms. Menzer very firmly argued that Mr. Lane should accept the plea agreement that had been offered. In essence, Ms. Menzer stated that it was Mr. Lane's duty to obtain his client's agreement. When Mr. Lane said that he would discuss the matter with his client, and that his client, not he, would make the decision, Ms. Menzer then stated that Ms. Harris had no defense to the case.

4.    In support of her contention that Ms. Harris could not rely upon a good faith belief based upon her having studied three books, Ms. Menzer stated that Ms. Harris had admitted to her that she had not read any of the three books in question.

5.    The three books referred to are beyond cavil Ms. Harris's research and reference material, which comprises the basis of her good faith defense pursuant to *Cheek v. United States,* 498 U.S. 192, (1992).

6.    Those three books had been published to the government as the documents upon which the defendant's good faith belief was based and was relied upon by the defendant as the basis of her testimony in this case to demonstrate that after having read and studied those manuals she was persuaded that she need not file standard income tax forms or pay taxes.

7.    Both the court and the government had been previously informed on more than one occasion by counsel that the defendant's entire defense was based upon her good faith belief as defined by *Cheek* Indeed, the court and Mr. Lane had engaged in colloquy about that specific subject.

8.    The government had been specifically informed that the defendant's testimony would be comprised of her reliance upon the three books previously referred to in this pleading, and specifically referred to by Ms. Menzer at the meeting with counsel and others on December 11, 2006.

9.    Ms. Menzer's assurance to Mr. Lane and others, made in the presence of another prosecuting attorney assigned to this case, that the defendant had admitted that she had not even read the books in question, had the apparently desired affect of convincing Mr. Lane that a guilty plea was necessitated since the defendant's good faith belief was a chimera.

10.    Subsequent to the December 11, 2006 cafeteria meeting Mr. Lane began an inquiry regarding the basis for Ms. Menzer's representations to him. Mr. Lane asked Ms. Harris if she had met with Ms. Menzer. She replied that she had done so. When asked for information

2

surrounding the circumstances of that meeting Ms. Harris provided the following statements.

11.     Ms. Harris stated that she would never had met with or talked with the government lawyers about any aspect of the case if she had been permitted to make that decision. She stated that the court had ordered her and her attorney, Dennis Eshman, Esq., to meet with the government lawyers, in the chambers of the court and in the absence of the court.

12.     That meeting was arranged by the court so that Mr. Eshman, who had practiced civil law but who was absolutely unfamiliar with the trial of criminal cases, could be informed by the government lawyers about a complicated question regarding sentencing guidelines.

13.     Mr. Eshman conducts a practice assisting individuals and entities with non-profit status, adoptions, family law, wills, probate, estate planning matters and civil tax matters.

14.     Prior to Mr. Eshman's representation of Ms. Harris, Mr. Eshman had never represented a client charged with a criminal violation of the Internal Revenue Code.

15.     Mr. Eshman has never tried a criminal or civil matter in a United States District Court. Mr. Eshman's initial appearance on behalf of Ms. Harris was to attempt to resolve this matter prior to an indictment. He had hoped to resolve a civil dispute.

16.     The Court was well aware of Mr. Eshman's background and lack of experience in federal court, and in criminal defense proceedings.  Apparently, for those reasons, on June 6, 2006 the Court ordered the defendant and her counsel to meet with the District of Columbia Federal Public Defender's Office, so that an Assistant Federal Public Defender might explain the applicability of the United States Sentencing Guidelines to Mr. Eshman, and how these guidelines could potentially affect the defendant, as well as to give insight on various aspects of the law that were relevant in a criminal tax case.

17.     Further, and most pertinent to this motion, on June 16, 2006, the Court ordered the defendant and her counsel to meet with Assistant United States Attorneys Ms. Menzer and Ms. Lucas, specifically to explore a specific aspect, of the United States Sentencing Guidelines.

The meeting took place in the chambers of the court. Ms. Harris was present only because she had been ordered to attend that meeting by the court.

18.    It was during the course of this meeting, that AUSA Menzer began to question Ms. Harris about her defense and to denigrate that defense just as she had later done in a meeting with counsel on December 11, 2006.

19.    On December 11, 2006, Ms. Menzer informed Mr. Lane that when she, Ms. Menzer, had talked with Ms. Harris about her alleged defense, Ms. Harris had admitted to her that she had not even read the very books upon which she was relying for her defense and upon which she had formed and based her belief, that the Internal Revenue Code did not require her to file a federal income tax return.

20.    On December 21, 2006, Mr. Lane sent a detailed letter to Ms. Menzer comprised of two and one half single-spaced pages containing in essence the same assertions set forth above. In that letter Mr. Lane asked Ms. Menzer that if there were any assertions as to fact with which she disagreed to "please inform me in writing."

21.    Ms. Menzer replied that "First, we disagree with your factual allegations." She made no other comment about the assertions; she declined to state what she disagreed with. Clearly, she could not have been stating that she had not made the statement to Mr. Lane. She could not have been stating that she was not present at the meeting in question.

22.    In her three sentence letter (one sentence stated only that she had received Mr. Lane's letter) Ms. Menzer said that she "did not intend" to use any statements made during the "negotiations" in "our case-in-chief." Thus she reserved the option to cross-examine Ms. Harris about the matter in question when she testified.

23.    On December 22, 2006, Mr. Lane again wrote to Ms. Menzer and asked her to "respond specifically" by stating those assertions as to fact with which she disagreed. Ms. Menzer has not responded.

4

## II. THE LAW

24.    A violation of 26 U.S.C. §7201 must be willful. *See* 26 U.S.C. §7201. The statutory willfulness requirement in §7201 can be negated by a subjective, "good-faith misunderstanding of the law or a good-faith belief that one is not violating the law." *See Cheek v. United States,* 498 U.S. 192, 199-202 (1992).

25.    It is fundamental to our concept of ordered liberty, that a jury decide the question of whether a defendant believed in good faith that (s)he was not violating the law, in this case the tax law. *See United States v. Lankford,* 955 F.2d 1545, 1550 (11th Cir. 1992); (*e.g.*; "[W]here the element of willfulness is critical to the defense, the defendant is entitled to wide latitude in the introduction of evidence tending to show lack of intent.") *Id.* (internal quotation marks and citations omitted).

26.    In this matter, the defendant is now foreclosed from receiving a fair trial. Her testimony is the only means available to demonstrate to the jury a good faith defense as defined and described in *Cheek, supra.*

27.    The trial judge, apparently relying upon the prosecutors to act appropriately, did not order that an official record of the court ordered meeting with the prosecutor and the defendant and counsel be made, and did not order the such a record be placed under seal, so that a transcript could be available for judicial review.

28.    It is quite apparent that Mr. Eshman was ill prepared to represent Ms. Harris in this matter; this was known to the prosecution and to the court as the record recounts. The United States Attorneys Office unfairly and outrageously took advantage of the situation. Clearly, the court believed that the prosecutors would act in an appropriate manner; certainly the court could not anticipate that the prosecutor would cross-examine the defendant as to the essential elements of her defense. All participants were well aware that counsel for the

defendant was not in familiar surroundings and that he was relying upon the prosecutors regarding the issues in this case. Indeed, the court ordered meeting in chambers was based upon that premise as had been the court ordered meeting with the public defenders office. The representatives of the public defenders office acted appropriately. In similar circumstances an over zealous prosecutor did not. Ms. Harris was accompanied by a lawyer, but that lawyer was not able to offer effective assistance. In *Harris By and Through Ramseyer v. Wood,* 64 F.3d 1432 (9th Cir. 1995): trial counsel's performance fell below an objective standard of reasonableness where counsel allowed the defendant to make incriminating statements to the prosecution, where the prosecutor refused to promise a reduction in charges or an offer of immunity, thereby causing plain error. *Id.* at 1436-1437. In the instant matter the court directed that the parties meet so that a relevant issue related to the sentencing guidelines could be explained to Mr. Eshman, not so that the prosecutors could cross-examine the defendant about the very issue at the heart of the defense.

29.     In *Torres v. Mintzes, 761 F.2d 275 (6th Cir. 1985)* the trial court refused to heed the defendant's expressions of dissatisfaction with his attorney, where there was open animosity between the trial judge and defense counsel, expressed in the presence of the jury, which led to counsel's refusal to serve and the abandonment of his client's defense.

30.     The *Torres, (habeas~§2255)* Court ruled that where trial counsel was provoked into acts inconsistent with his duties of loyalty to his client, by the trial court, such interference effects the fairness of the trial court and prejudice is presumed.  *See Rule 52(b.)* Moreover, the *Strickland v. Washington* ineffective assistance of counsel standard is not applicable in the face of error. *Id.* at 280-281.

31.     Prosecutorial misconduct should be evaluated not on the basis of culpability but by its effect on the fairness of the trial. *See United States v. Agurs,* 427 U.S. 97, 110 (1976). Ms. Menzer's improper questioning of the criminal defendant on June 16, 2006, before counsel

who was ill prepared to represent her in a criminal tax case, now precludes the defendant from

receiving a fair trial, and this matter must be dismissed as a matter of fundamental fairness.

### III. NO REMEDY OTHER THAN
### DISMISSAL IS APPROPRIATE

32.     While the government's implication that it may raise the defendant's alleged

admission on cross-examination can be remedied by a pre-trial ruling by the court prohibiting

it from doing so, such an order would not even begin to address the gravity and scope of the

issues created by the misconduct of the prosecutor in this case. The government has apparently

not yet understood the extent of its deliberate mischief.

33.     The Code of Professional Responsibility asserts that generally a lawyer may

not proffer evidence that he reasonably believes to be false. *See Rule 3.3, Candor Towards the*

*Tribunal.* In this case counsel was not present at the meeting at which Ms. Menzer represented

that she had questioned the defendant and that the defendant had responded by admitting that

she had not read the books upon which her good faith defense rests. Ms. Menzer's statement to

Mr. Lane was made in the presence of another prosecutor and two other representatives of the

District of Columbia. Not one of them disagreed with the very clear and unambiguous

statement made by Ms. Menzer regarding the admissions allegedly made by Ms. Harris.

34.     Under the circumstances it is more than difficult, it is impossible, for Mr. Lane to

know what transpired at the meeting. What is clear is that Mr. Lane is precluded from

presenting the testimony of Ms. Harris, asking her questions during that direct examination and

subsequently making a closing statement to the jury about her testimony. *See Rule 3.3 (b).*

35. The Code of Professional Responsibility prohibits the presentation of that

testimony by counsel, given these circumstances. The writers of the code apparently did not

contemplate that there would ever be a court ordered conference with prosecutors and the

defendant. Therefore, misconduct by the prosecutors in such circumstances is not discussed

and no specific remedy is offered.

36.     What was contemplated by those who drafted the professional guidelines was the possibility of admissions made directly to defense counsel by the defendant and remedies including the withdrawal of counsel, a narrative statement by the defendant and precluding defense counsel addressing the subject in closing statement. Here, those remedies have no application.

37.     Counsel did not learn of the alleged underlying facts through his own investigation or through admissions made by his client to him. Here the serious misconduct of the prosecutors was responsible for the conflict. Withdrawal of counsel is not a remedy here; the information was not uncovered by counsel. Here the information would of necessity be shared with any newly retained or appointed counsel.

38.     Placing restrictions upon the presentation of the defendant's testimony in this case would penalize the defendant for the egregious misconduct of the prosecutor. Further, such restrictions in this case would be draconic since such restrictions would undermine the entire defense and would preclude counsel from making any closing based upon the defense.

39.     It will come as no surprise to the court or to the prosecutors that the sole and entire defense in this case is the defendant's assertion that she acted in good faith and actually believed that what she had read in the three books, books which had previously been provided to the prosecutors and books about which she was cross-examined by the prosecutor. Counsel on more than one occasion had discussed this defense with the court and the government on the record.

40.     Mr. Lane has sent a letter to the bar association of the District of Columbia seeking guidance in this matter. It is the bar, not counsel, not the government and not even the court, which ultimately determines if a lawyer's conduct is ethical, and which has the

power to take action against a lawyer who does not meet the standards of the bar.

41.     Mr. Lane has practiced law for more than fifty-six years, has appeared before numerous United States Courts of Appeals, has argued before the United States Supreme Court and has tried cases in approximately half of the states of the United States. He has never been sanctioned by any court, he has never been held in contempt by any court and he has never been disciplined by the bar associations of which he is a member, or any other bar association. He has appeared as a featured speaker before the American Bar Association national convention, several other bar associations, and has taught classes on law and ethics. A judge of this court has, in a written opinion, expressed his commendation to Mr. Lane for helping to develop the law of sanctions in this court. Mr. Lane, is not now prepared to act in a fashion that contravenes the rules that guide our profession.

42.     Counsel requests that the court dismiss this case due to the outrageous misconduct of the prosecutor during a meeting with the defendant ordered by the court. Should the court deny this motion to dismiss, the defendant requests a stay so that the matter may be submitted to the United States Court of Appeals as an interlocutory appeal and so that the bar association may be given an opportunity to provide guidance to Mr. Lane.

## IV. THE DEFENDANT'S RIGHT TO INTERLOCUTORY APPEAL

43.     In the event that this Court denies Ms. Harris's Motion to Dismiss, the defendant will file an interlocutory appeal with the United States Court of Appeals for the District of Columbia Circuit. This matter falls into the category of issues that are separable from, and collateral to, rights asserted in the criminal action, and commonly referred to as the "collateral order" exception as described in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 546 (1949). The issue raised in this motion to dismiss is independent of the cause itself, and too important to require that appellate consideration be deferred until the

whole case is adjudicated.

**WHEREFORE,** the defendant, Cassandra Harris, respectfully moves the Court for an entry of an Order dismissing this action for cause shown. In the alternative, grant the Appellant a continuance in this matter to seek appellate review, pursuant to the dictates of 28 U.S.C. § 1292, and grant any other relief to the defendant that the Court may deem proper.

Respectfully Submitted,

January 13, 2007

s/ Mark Lane
MARK LANE
The Lane Law Firm
2523 Brunswick Rd Charlottesville, Va. 22093
(434) 293-2349
Attorney for Cassandra Harris