UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Cr. No. 06-124 (ESH) |
| CASSANDRA HARRIS,<br>  Defendant. | : |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum in aid of sentencing. Consistent with the plea agreement in this case, the government requests that this Court sentence defendant to a prison term within the recommended Guideline range of 10 to 16 months and order restitution to the Internal Revenue Service in the amount of $45,019.[1]

I.     **FACTUAL BACKGROUND**

For almost thirty years, defendant Cassandra Harris was employed in the Human Resources Department of the Central Intelligence Agency ("CIA"). During the prosecution period, defendant held senior and supervisory positions within the Human Resources Department as a grade 14 employee, earning in excess of $70,000 a year. Defendant is a high school graduate and earned some college level credit by taking advantage of the government's training opportunities at the CIA.

---

[1] Prior to defendant's agreement to plead guilty, she paid her delinquent taxes from 1999 through the 2002 tax years to the District of Columbia Office of Tax and Revenue ("D.C. OTR"). It also appears from the documents defendant submitted to U.S. Probation Officer Tennille Losch that she made one payment in the amount of $23,426.60 to the IRS in payment of her tax liability for the 1999 tax year. This figure is greater than the government's criminal calculation for 1999 - $12,830 - because it includes interest and penalties. Defendant still owes the IRS for the amount she evaded for 2000, 2001 and 2002, which totals $45,019. See Government Exhibit 1.

Defendant prepared and filed her own federal and D.C. income tax returns prior to the prosecution years. In 1999, however, defendant stopped paying income taxes. Specifically, defendant filed withholding forms with the CIA, a W-4 Form for the federal government and a D-4 for the D.C. government, falsely claiming she was exempt from withholding. As a result, the CIA stopped withholding any federal or state income taxes from defendant's wages.[2] Furthermore, when she filed her federal and D.C. tax returns for 1999, she falsely claimed she had no income and owed no taxes. She even demanded refunds from the federal and local revenue authorities for the taxes for the small amount of taxes that had been withheld before her "exempt" withholding forms took effect.

Beginning in the Fall 2000, the IRS attempted to contact defendant on numerous occasions through the mail and by telephone, requesting an appointment with her concerning her taxes. Defendant failed to respond to these requests. Instead, she contacted the Advocates Office in February 2001, complaining that the IRS agents were violating her rights. In April 2001, defendant filed another "zero" return with the IRS, falsely claiming she had no income and owed no taxes in 2000. Defendant filed a D.C. return for 2000, but claimed she owed zero taxes despite admitting to earning $74,824 in 2000. Defendant attached a letter containing her tax protester views to both her federal and D.C. 2000 returns where she stated:

> I am a non-resident to the state of the forum of US tax laws, I am aware that citizens have been illegally prosecuted under the IRS Sections 7201 and 7203 for the non-existent 'crime' of allegedly failing to file a 1040 and State Income Tax Form. . . this return is not being filed voluntarily. It is being filed because of fear

---

[2] The W-4 Form and D-4 Form were not changed until 2003, and therefore, remained in effect for the 1999-2002 tax years. As a human resource specialist, defendant knew that the CIA does not regularly review these forms and relies upon its employees to truthfully and accurately complete the withholding certificates.

2

of being illegally penalized and prosecuted for failure to file a return for 2000. Moreover, in July 2001, defendant sent an affidavit to the IRS reiterating her claims that she was exempt from paying income taxes under the law. Specifically, she wrote:

> [p]lease be advised that your notice of delinquent (so called) income taxes is illegal and unconstitutional. Framers of the Constitution included not one but two limitations in the Constitution that forbid the government to impose any direct taxes upon individuals or upon any property. All direct taxes are required to be 'apportioned' which means that they must be laid upon the state government in proportion to each state's population. This rule also applies to the District govt although denied the rights of statehood by the federal government but given the responsibility of statehood through the granting of limited Home Rule.

Defendant continued to send correspondence of a similar nature to the IRS.

After learning that the federal and local governments were investigating her failure to pay income taxes, she stopped filing timely returns for the 2001 and 2002. Even in June 2002, when she learned that she was under criminal investigation by D.C., she continued to provide documents containing "protester" materials. Despite the materials, OTR provided defendant with the opportunity to pay her delinquent D.C. taxes. Defendant stated she wanted to pay her taxes, made four $300 payments, but stopped making payments and failed to submit a signed payment agreement as requested by OTR.

In August 2003, after the IRS notified defendant that an official tax assessment had been made against her, defendant sent a blank "bond" to the IRS claiming it would satisfy any debt. She indicated that her tax debt could be satisfied by negotiation of the "bond" at a Puerto Rican Bank. Defendant was told that the IRS would not accept the "bond" as payment. The Revenue Officer explained to defendant that the fictitious bond could not pay her debt and encouraged her to file accurate returns and pay her taxes due. When she failed to do so, defendant's case was

referred to the IRS's criminal investigation.

In May 2004, IRS Special Agents attempted to contact defendant at her home. No one answered the door. Shortly thereafter, on May 25, 2004, defendant signed and filed U.S. Individual Income tax returns for the calendar years 2001 and 2002, in which she correctly reported her income. Although she calculated the corresponding tax due and owing as $16,183 and $14,456, respectively, she made no payments. The following month, in June 2004, defendant signed and filed amended U.S. individual income tax returns for the calendar years 1999 and 2000, in which she correctly reported her income. Again, she correctly calculated the resulting tax due and owing as $12,704 and $13,703, respectively, but failed to make any payments with the filing of these returns.

In total, defendant evaded $56,749 in federal taxes and $22,234 in D.C. income taxes for the calendar years 1999 through and including 2002.

II.  **SENTENCING RECOMMENDATION**

To comply with the Court's mandate in United States v. Booker, 543 U.S. 220 (2005), a sentencing court must first correctly determine the applicable Guidelines sentence, and then, after considering the Guidelines and all other factors in Section 3553(a), decide whether to apply the Guidelines sentence or a non-Guidelines sentence. United States v. Coumaris, 399 F.3d 343, 351 (D.C. Cir. 2005). If the district court decides not to apply a Guidelines sentence, it should explain on the record its rationale for varying from the advisory sentence. See, e.g. United v. Coles, 403 F.3d 764 (D.C. Cir.2005); United States v. Mares, 402 F.3d 511, 519 (5th Cir.), cert. denied, 126 S. Ct. 43 (2005); 8 U.S.C. § 3553(c)(2). The final sentence will then be subject to review for "reasonableness." Booker, 543 U.S. at 260-261; United States v. Price, 409 F.3d 436,

444 (D.C. Cir. 2005).[3]  Importantly, the Court of Appeals for the D.C. Circuit has held that a sentence within the applicable Guideline range is "'entitled to a rebuttable presumption of reasonableness.'" United States v. Bras, 2007 WL 1159752 at 3 (D.C. Cir. April 20, 2007) (*quoting* United States v. Dorsely, 454 F.3d 366, (D.C. Cir.), cert. denied, 127 S. Ct. 691 (2006)).

### A.     Sentencing Guidelines

Section 2T4.1 of the Tax Guidelines Manual controls sentencing for the offense of income tax evasion, in violation of 26 U.S.C. § 7201.  The offense level is dependent upon the amount of loss.  Defendant and the government stipulated as part of the plea agreement that the loss amount to the federal government was $56,749.[4]  The Tax Table at § 2T4.1 reflects that the base offense level is therefore 14.  The parties also agreed pursuant to the plea that defendant was entitled to a two-level decrease to the offense level pursuant to Section § 3E1.1(b).  Defendant has no criminal history points, which establishes a criminal history category of I.  See PSI at ¶ 36.  With an offense level of 12, defendant's guideline range is 10 to 16 months incarceration.  See PSI at ¶ 57.  It is the government's position that the Court should impose as the sentence in the case a term of imprisonment within the guidelines range of 10 to 16 months.

---

[3] In deciding whether a sentence is reasonable the reviewing court will consider whether there was legal error, which includes a failure to follow the strictures of the Sentencing Guidelines.  Price, 409 F.3d at 442.

[4] In determining defendant's base offense level, any subsequent payment of defendant's taxes is irrelevant.  In addition to the federal tax loss, defendant evaded $22,234 in D.C. income taxes.  See Government Exhibit 2.  This amount should be included in the total tax loss.  See U.S.S.G. Section 2T1.1 Application Note 3 ("'criminal activity' means any conduct constituting a criminal offense under federal, state, local, or foreign law.").  As a result, the total tax loss is $78,981.  The offense level nevertheless remains 14.  See Tax Table 2T4.1.

### B.    Sentencing Factors under 18 U.S.C. § 3553

As the Court is well-aware, the recommended sentence set forth in the Sentencing Guidelines is but one factor this Court should consider in determining an appropriate sentence. The Court should also consider the factors set forth at 18 U.S.C. § 3553. As set forth below, these additional considerations do not provide a basis in this case for a sentence other than that recommended by the Sentencing Commission.[5]

A sentence within the range of 10 to 16 months is appropriate to the nature and circumstances of the offense and the history and characteristics of this defendant. See §3553(a)(1). Defendant's scheme was carefully planned and intentionally carried out over a long period of time. Defendant had sufficient time, over four years, to reflect upon her conduct and to change the course of her actions, which she choose not to do. Each time defendant spoke with an IRS representative, sent correspondence to the IRS or OTR, filed false tax returns or failed to file tax returns, was a separate action which furthered her scheme to evade taxes. If she had not been caught and if there was no federal criminal investigation, it is more than likely that she would have continued to evade her taxes.

Defendant's history and characteristics reflect an educated, intelligent individual with employable skills and a salary more than sufficient to support herself. She worked her way up to a grade level 14 in the CIA Human Resources Department. A review of defendant's finances do not show a need for additional income, such as a large medical expense, that could be used to justify her actions. Defendant had a traditional upbringing. She has a loving family who remain

---

[5]As this Court is aware, the district court needs to consider the goals of Section 3553 in determining the appropriate sentence, however, the court is not required to specifically refer to each factor listed in § 3553(a). See United States v. Ayers, 428 F.3d 312, 315 (D.C. Cir. 2005).

loyal and supportive. She has been active in the church and has support from church members. There is simply no rationale for defendant's actions other than greed and her failure to want to pay her fair share.

When defendant was confronted by both the IRS and the OTR regarding her false 1999 tax returns, defendant refused to correct her returns and pay her taxes. In fact, despite being provided the numerous opportunities to set up payment plans, she failed to do so or follow through. Moreover, defendant continued her illegal activity even after being informed by the IRS that her tax protester views were erroneous. Indeed, she filed another false tax return for 2000 and then failed to file any returns for 2001 and 2002 until 2004, after learning of the criminal investigation.

Her conduct, in light of her education and employment history, is inexcusable. It is particularly disturbing that defendant, a long time federal employee and resident of the Nation's Capitol, refused to pay her taxes based upon worthless legal arguments. Not only did she commit a crime, but she burdened the already over-burdened federal and local taxing authorities with her nonsensical arguments. She demanded answers to questions that she clearly knew the answers to in an effort to thwart collection of her outstanding indebtedness.

The Court should also consider the need for the sentence to be imposed which reflects the seriousness of the offense, promotes respect for the law, provides just punishment forth offense and provides deterrence. To ensure respect for this system, those who do not report and pay their fair share of taxes need to be prosecuted and punished. Only a sentence containing a significant period of imprisonment is sufficient. Deterrence and respect for the law are both lacking where the sole punishment for evading taxes— only if and when it is detected — is disgorgement of the

money. A strong message needs to be sent to defendant and others that such conduct will not be tolerated and those who choose to commit like crimes would be sentenced to incarceration accordingly. This is particularly true here, where defendant relied upon the teachings of an organized movement for the information, forms and arguments she proffered to the IRS and DC OTR throughout the prosecution period.

Significantly, Section 3553 places fundamental emphasis on uniformity of sentencing, which adherence to the guidelines provides.[6] As the Court is aware, the offense level for cases involving tax evasions is driven by the amount of loss caused by a defendant's criminal activity. In this case, defendant evaded $56,749 from the federal government. A period of incarceration between 10 and 16 months is proportionate to those imposed in similar tax prosecutions.[7]

---

[6] It is clear from the explicit language of the statute that the framers both endorse and respect the ranges set by and the policy statements made by the United States Sentencing Commission, which in these circumstances recommends imprisonment. The converse is also true: the Sentencing Guidelines explicitly recognizes §3553 as its linchpin, setting forth in its preamble its reliance on the statute and calling out each and every factor set forth therein. We note most particularly the factor set forth in §3553(a)(6), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," which is the heart and spirit of the Guidelines. See 18 U.S.C. §3553(a)(6). Indeed, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. See United States v. Gillespie, 436 F.3d 272, 275 (D.C.Cir. 2006) (not "surprising" that "a sentence derived from the § 3553 factors is identical to a Guidelines sentence" because "the Guidelines were intended to promote uniformity in the applications of the § 3553(a) factors, not to distort them."). It is in with this commitment that the government presses the Court for a sentence consistent with the Guidelines.

[7] Recently, on April 13, 2007, in the District of Maine, Judge Hornby sentenced John Anthony to 33 months after a jury convicted him of evading slightly more than $200,000. On April 4, 2007, U.S. District Judge John Padova in Philadelphia sentenced Alan Farnsworth to a 27 month term of incarceration for evading approximately $80,000 in taxes. On July 31, 2006, Chief Judge Patricia Fawsett of the U.S. District Court in the Middle District of Florida sentenced husband and wife, Richard and Mary Ann Maclean, to periods 33 and 24 months, respectively, for evading approximately $100,000 in taxes. Anthony, Farnsworth, and the Macleans, similarly claimed, like defendant, that they were not required to pay income taxes.

## III. CONCLUSION

For the reasons set forth herein, the government believes that a sentence within the applicable guideline range of 10 to 16 months and an order of restitution is necessary, reasonable and appropriate in this case.

Respectfully Submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar #498610


_____
SUSAN B. MENZER, #421007
DIANE G. LUCAS, #443610
Assistant United States Attorneys
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-6968 (Menzer)
(202) 514-7912 (Lucas)
